UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DESTINI BIGELOW, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>MATTEL, INC. and FISHER-PRICE, INC.<br><br>   *Defendants*. | **CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Defendants Mattel Inc. and Fisher-Price, Inc. ("Defendants") are well-known, trusted brands that manufacture, market, and sell products for babies and children. Families across the country trust that the Mattel and Fisher-Price products they purchase are safe for their children to use.

2. Yet one of their lines of products, the Snuga Swings ("the Products"), created an unsafe suffocation risk for infants placed in the product, and Defendants never warned families about this risk.

3. Like other consumers, Plaintiff Destini Bigelow purchased the Snuga Swing for her newborn believing it was safe. She would not have paid the price she did for the Products if she knew of the suffocation risks associated with use of the Products.

## PARTIES

4. Plaintiff Destini Bigelow is domiciled in Flint, Michigan.

1

5. Defendant Mattel, Inc. is a Delaware corporation with its principal place of business at 333 Continental Blvd., El Segunda, CA 90245.

6. Defendant Fisher-Price, Inc. is a Delaware corporation with its principal place of business at 636 Girard Avenue, East Aurora, NY 14052.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendants.

8. The Court has personal jurisdiction over Defendant Fisher-Price because Defendant is headquartered in New York, has substantial contacts with, and receives substantial benefits and income from New York. The Court has personal jurisdiction over Defendant Mattel because it has substantial contacts with, and receives substantial benefits and income from New York.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant Fisher-Price would be subject to personal jurisdiction in this District if this District were a separate state, given that Fisher-Price is headquartered in the Western District of New York.

## FACTS

**I. Defendants sell Snuga Swings without warning consumers of the suffocation risks associated with the Products, despite knowing the risks.**

10. Defendants manufacture, market, and sell the Snuga Swings, including models such as My Little Snugabunny, My Little Snugabear, among others. Defendants state that the swings are designed to cradle infants and provide both front-to-back and side-to-side motion.

2

11. These Products were a commercial success—since 2010, Defendants have sold more than 2.1 million Snuga Swings in the United States, online and in brick-and-mortar stores through retailers such as Amazon, Wal-Mart, and Target, for an average price of $160.

12. However, nowhere on its packaging or on the Products themselves did Defendants provide consumers with a clear, conspicuous warning of the suffocation risks associated with the Products.

13. When consumers purchase Snuga Swing Products, they reasonably believe that those Products are safe for use. No reasonable consumer purchases the Snuga Swing Product, from reputable and well-known brands like Mattel and Fisher-Price, expecting it to come with suffocation risks for their child, especially without an explicit warning of those risks.

14. Because Mattel and Fisher-Price omit the risk of suffocation from their packaging and warning labels, consumers have no way of knowing at the time of purchase that they risk having their infant suffocate in the Snuga Swing Products.

15. This omission is highly material to reasonable consumers. The reason that consumers buy Snuga Swing Products is because they believe they are safe for use with infants. No reasonable consumer would pay the price they paid for the Products if they thought the Products were not safe, or came with a high suffocation risk.

16. Defendants knew of these risks. In a report made to the Consumer Products Safety Commission ("CPSC") in 2014, one consumer stated that, while sitting in one of the Products, her three-month old son had turned the head support and pillow with his head and face pressed into the fold.[1] The consumer noted that while her son was okay, she was "very concerned that due to

---

[1] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1422147

the way the head pillow is attached to the swing that a baby could get trapped/folded, get their face in it, have their breathing restricted, and die."

17. Since all CPSC reports are sent to the manufacturer of the product at issue, Mattel and Fisher-Price received this report and were on notice of the danger presented by the Products.

18. This was not the only complaint of this type made to the CPSC regarding the Products. In 2019, another consumer sent in a nearly identical incident report, describing how her five-month-old son was able to lift the pillow part of the swing over his face and then was unable to get it off.[2]

**II. The Snuga Swings are recalled, and Defendants offers customers inadequate relief for the unsafe Products.**

19. On October 10, 2024, the CPSC issued a recall of all Snuga Swing Products sold since 2010.[3]

20. In its recall notice, the CPSC stated that the Products "should never be used for sleep and bedding materials should never be added to it…[because] the headrest and body support insert on the seat pad can increase the risk of suffocation."

21. It further noted that five deaths involving infants 1 to 3 months of age had been reported when the Products were used for sleep.

22. Despite the recall involving companies with billions of dollars in revenue each year (Mattel and Fisher-Price) and an incredibly dangerous safety hazard (suffocation/death), the recall

---

[2] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1908401

[3] https://www.cpsc.gov/Recalls/2025/Fisher-Price-Recalls-More-than-2-Million-Snuga-Infant-Swings-Due-to-Suffocation-Hazard-After-5-Deaths-Reported

provides only $25 in potential relief to consumers, and that is only if consumers "remove and destroy the headrest and body support insert."[4]

23. This recall was immediately panned by consumer safety experts. CPSC Commissioner Richard Trumka stated that "the flawed recall that Fisher-Price is announcing today is doomed to fail and will keep many babies in harm's way…," noting that Fisher-Price was continuing to urge consumers to use the swing so long as infants are not sleeping in it and the headrest and body support inserts are removed. Commissioner Trumka wrote that he had "no doubt that if these products remain in homes, many consumers will still use these products for sleep because they have received conflicting instructions over time," citing a Fisher-Price YouTube video from 2015 stating that the Products were safe for naps.[5]

24. He ended his letter thusly: "Fisher-Price can do more to save babies' lives—I think it needs to. And I firmly believe that consumers should demand more from this company."

25. Consumer Reports was equally critical of the recall, noting that while it was good that it was now illegal for retailers to sell Snuga Swings, the recall does not go far enough "to help families protect their children and ensure that consumers are made whole for spending money on a product that turned out to be hazardous."[6]

26. "Once again, Fisher-Price is putting its bottom line first and safety last," says William Wallace, CR's associate director of safety policy. "There should be a full refund, and

---

[4] *Id.*

[5] https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/Commissioner-Trumka-Warns-That-Fisher-Price%E2%80%99s-Snuga-Recall-Is-Not-Good-Enough-to-Keep-Babies-Safe-Multiple-Babies-Dead

[6] https://www.consumerreports.org/babies-kids/baby-product-recalls/fisher-price-snuga-baby-swings-recalled-for-suffocation-risk-a2341467743/?msockid=038f166db78660e02b760239b6c56180

Fisher-Price should be urging people to throw away these swings. Retailers, online platforms, and secondhand marketplaces should all prohibit Snuga Infant Swings from being sold and take a range of steps to make sure they aren't listed."[7]

### III. Plaintiff Destini Bigelow purchases a Snuga Swing.

27. In or around July 2021, Destini Bigelow purchased a Snuga Swing, she believes from a Walmart in Michigan, for her newborn daughter.

28. She saw no warnings on the packaging for the Product about suffocation risks, and believed that the Product was safe for her newborn child to use.

29. Ms. Bigelow used the swing for her daughter on several occasions, but twice her daughter fell out of the swing. Ms. Bigelow stopped using the swing after her daughter fell out of the Product the second time, causing a minor bump on her forehead.

30. Ms. Bigelow would not have purchased the Product at the price she paid—approximately $160—had she known that the Snuga Swing presented serious suffocation risks to her newborn daughter.

31. Plaintiff wants Defendants to fix their practices and sell a safe swinging seat for babies. If Defendants fix their Products, she would buy the Products again. But given Defendants' past deception, Plaintiff cannot rely on their word alone that they fixed the problem. Plaintiff faces an imminent threat of harm because she will not be able to rely on Defendants' Products, and related marketing or labeling, in the future. To buy the Products again, Plaintiff needs the Court to enter an order mandating that Defendants change the design of the Products, and cure the omission of the suffocation safety risks on the Products' marketing and labeling.

---

[7] *Id.*

**IV.      No adequate remedy at law.**

32.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

33.     A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Products she received have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased products that she would not otherwise have purchased, but for Defendants' misrepresentations and/or omissions. Obtaining a full refund at law is less certain than obtaining a refund in equity.

34.     Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings the asserted claims on behalf of the proposed class of:

**Nationwide Class**: all persons who, within the applicable statute of limitations period, purchased one or more of Fisher Price's Snuga Swing Products.

**Michigan Subclass**: all persons who, while in the state of Michigan and within the applicable statute of limitations period, purchased one or more of Fisher-Price's Snuga Swing Products.[8]

36.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers, and directors; (3) persons

---

[8] At times throughout the remainder of the Complaint, both classes are referred to collectively as "the Class."

who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

37.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

38.    Class members can be identified through Defendants' sales records and public notice.

### *Predominance of Common Questions*

39.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

    a.    whether Defendants made false or misleading statements of fact or material omissions in its labeling and marketing of the Products;

    b.    whether Defendants violated the consumer protection statutes of multiple states, including Michigan;

    c.    whether Defendants committed a breach of implied warranties;

    d.    damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality & Adequacy*

40.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Snuga Swing Products.  There are no conflicts of interest between Plaintiff and the class.

### *Superiority*

41.    A class action is superior to all other available methods for the fair and efficient

adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## CLAIMS

### First Cause of Action
### Violation of New York Gen. Bus. Law § 349
### (By Plaintiff and the Nationwide Class)

42. Plaintiff incorporates each and every factual allegation set forth above.

43. Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

44. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

45. The conduct of Defendants alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Nationwide Class seek monetary damages.

46. Defendants misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers through material safety omissions described above, specifically by failing to inform consumers that its Products presented a serious suffocation risk.

47. Fisher-Price's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Nationwide Class to purchase and pay a premium for the Products when they otherwise would not have.

48. Plaintiff the Nationwide Class have been injured inasmuch as they paid a premium for Products that posed a suffocation risk for infants. Had they known the truth about the Products,

Plaintiff and the Nationwide Class would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and the Nationwide Class received less than what they bargained and/or paid for.

49. Defendants made untrue and/or misleading statements and material omissions willfully, wantonly, and with reckless disregard for the truth.

50. As a result of Defendants' unlawful deceptive acts and practices, Plaintiff and the Nationwide Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Fisher-Price's unlawful conduct, interest and attorneys' fees and costs.

## Second Cause of Action
### Violation of New York Gen. Bus. Law § 350
### (by Plaintiff and the Nationwide Class)

51. Plaintiff incorporates each and every factual allegation set forth above.

52. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

53. Plaintiff brings this claim individually and on behalf of the Nationwide Class.

54. GBL § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

55. GBL § 350-a(1) provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails

to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

56. Defendants' omissions of the suffocation risks of the Products are materially misleading representations since they misrepresent that the Products do not pose a risk to infant-users. As a result of these omissions, reasonable consumers formed the mistaken belief that the Products were safe to use.

57. Defendants' advertising of the Products induced Plaintiff members of the Nationwide Class to buy the Products. Thus, Defendants made material misrepresentations and omissions about the Products.

58. Plaintiff and the Nationwide Class have been injured inasmuch as they paid a premium for Products that posed the a suffocation risk, contrary to Defendants' omissions. Had they known the truth about the Products, Plaintiff and the Nationwide Class would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and the Nationwide Class received less than what they bargained and/or paid for.

59. Defendants made the foregoing untrue and/or misleading representations willfully, wantonly and with reckless disregard for the truth.

60. As a result of Defendants' unlawful deceptive acts and practices, Plaintiff the Nationwide Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendnats' unlawful conduct, interest and attorneys' fees and costs.

### Third Cause of Action
**Breach of Contract**
**(by Plaintiff, the Michigan Subclass, and the Nationwide Class)**

61. Plaintiff incorporates each and every factual allegation set forth above.

62. Plaintiff brings this cause of action individually and for the Nationwide Class. Common law breach of contract claims are materially similar in all fifty states. In the alternative, Plaintiff brings this claim under Michigan law for herself and members of the Michigan Subclass.

63. Plaintiff and members of the Class entered into contracts with when they purchased the Products. A valid contract existed between Plaintiff (and the class) and Defendants.

64. The contracts provided that Plaintiff and members of the Class would pay Defendants for the Products ordered.

65. The contracts further required that Defendants provide Plaintiff and members of the Class with Products that conformed to the description advertised on the website and that was free of defects. These were specific and material terms of the contracts.

66. Plaintiff and members of the Class paid Defendants for the Products they ordered, and satisfied all other conditions of their contracts.

67. Defendants breached the contracts with Plaintiff and members of the Class by failing to provide Products that conformed to the description advertised on the website. Defendants breached the contract by providing Products that were defective, as described more fully above, and by materially omitting the safety risks, namely the risk of suffocation, association with the Products.

68. As a direct and proximate result of Defendants' breaches, Plaintiff and members of the Class were deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

### Fourth Cause of Action
### Violation of the Michigan Consumer Protection Act, M.C.L. § 445 *et seq.*
### (by Plaintiff and the Michigan Subclass)

69. Plaintiff incorporates each and ever factual allegation set forth above.

70. Plaintiff brings this cause of action individually and on behalf of the Michigan Subclass.

71. The Michigan Consumer Protection Act prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct or trade of commerce.

72. The intent of the act is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Noggles v. Battle Creek Wrecking*, Inc., 395 N.W.2d 322 (Mich. 1986).

73. Defendants' sale of the Products constitutes trade of commerce.

74. Moreover, Defendants acted deceptively when they marketed and sold the Products without informing consumers of the risks inherent with their use, specifically the risk of infants suffocating while using the Products.

75. Defendants acted deceptively in order to induce consumers to purchase the Products.

76. As a result of these deceptive methods, acts, or practices, consumers such as Plaintiff and members of the Michigan Subclass suffered economic harm, as they would not have paid the price they paid for the Products had they known of the associated suffocation risks.

77. As a result of Defendants' unlawful deceptive acts and practices, Plaintiff the Michigan Subclass are entitled to monetary, compensatory, and punitive damages, interest, and attorneys' fees and costs.

### Fifth Cause of Action
### Breach of Implied Warranty of Merchantability
### (by Plaintiff, the Michigan Subclass, and the Nationwide Class)

78. Plaintiff incorporates each and every factual allegation set forth above.

79. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the Michigan Subclass.

80. The Uniform Commercial Code Sec. 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Merchantable goods must be "fit for the ordinary purposes for which the goods are used."

81. As alleged above, Plaintiff and members of the Class entered into contracts with Defendants when they purchased Products. A valid contract existed between Plaintiff and the Classes and Defendants.

82. Defendants are and were at all times merchants with respect to its Products for children, and the products constitute goods under the UCC.

83. Plaintiff and members of the Nationwide Class purchased the Products.

84. Defendants, as the manufacturer, marketer, and seller of the Products impliedly warranted to Plaintiff and the Class that the products were of merchantable quality and were safe for their ordinary use.

85. In fact, the Products were never in merchantable condition and were not fit for children to use while sleeping. Specifically, the Products were unsafe in that they presented suffocation risks.

86. Defendants breached the implied warranty of merchantability when they sold the Products.

87. Defendants' breach directly caused Plaintiff and the Class harm, as neither Plaintiff nor the Class would have bought the products had they known the products were unsafe when used for their ordinary purpose.

### Sixth Cause of Action
### Breach of Implied Warranty of Fitness
### (by Plaintiff, the Michigan Subclass, and the Nationwide Class)

88. Plaintiff incorporates each and every factual allegation set forth above.

89. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the Michigan Subclass.

90. The Uniform Commercial Code Sec. 2-315 states where a seller has "reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is…an implied warranty that the goods shall be fit for such purpose."

91. Plaintiff and members of the Class purchased Products for the particular purpose of soothing and securing their children safely, and Defendants knew or should have known this.

92. Defendants marketed themselves as a knowledgeable and effective developer, manufacturer, and seller of products for children.

93. Defendants knew or should have known that Plaintiff and members of the Class would justifiably rely on Defendants' particular skill and knowledge of infant products when choosing to purchase the Products.

94. Plaintiff and members of the Class did justifiably rely on Defendants' purported judgment and skill.

95. But the Products were not suitable for their intended purpose, as they were not safe to use.

96. Defendants thus breached its implied warranty of fitness concerning the Products and knew of this breach through consumer complaints and reports of infant deaths in the Products.

15

97. As a result of the breach, Plaintiff and members of the Class suffered economic harm and damages.

**Seventh Cause of Action**
**Negligent Misrepresentation/Omission**
**(by Plaintiff, the Michigan Subclass, and the Nationwide Class)**

98. Plaintiff incorporates each and every factual allegation set forth above.

99. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the Michigan Subclass.

100. As alleged more fully above, Defendants omitted crucial information in the labeling and marketing of the Products, failing to disclose the suffocation risk associated with said Products.

101. These representations were false.

102. When Defendants made these misrepresentations, they knew or should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true when made.

103. Defendants intended that Plaintiff and members of the Class rely on these representations, and Plaintiff and members of the Class read and reasonably relied on them.

104. In addition, class-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

105. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and members of the Class.

106. Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products if they had known that the Products were unsafe for use.

### Eighth Cause of Action
### Fraudulent Misrepresentation/Omission
### (by Plaintiff, the Michigan Subclass, and the Nationwide Class)

107. Plaintiff incorporates each and every factual allegation set forth above.

108. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and the Michigan Subclass.

109. As alleged more fully above, Defendants omitted crucial information from the Products' label and marketing, failing to disclose the suffocation risks associated with the Products.

110. These representations were false.

111. When Defendants made these misrepresentations, they knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

112. Defendants intended that Plaintiff and members of the Class rely on these representations and Plaintiff and members of the Class read and reasonably relied on them.

113. Defendants had superior knowledge of the Products compared to consumers, and Defendants knew or should have known about the dangerous risks associated with the Products. Defendants had a duty to warn consumers about the risks of its Products.

114. In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

115. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and members of the Class.

116. Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Products if they had known that the Products were unsafe.

## RELIEF

117. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

118. Plaintiff demands the right to a jury trial on all claims so triable.

(signature block on next page)

Dated: October 17, 2024

Respectfully submitted,

By: /s/ *Andrew M. Debbins*
Terrence M. Connors, Esq.
Andrew M. Debbins, Esq.
CONNORS LLP
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
T: (716) 852-5533
F: (716) 852-5649
tmc@connorsllp.com
amd@connorsllp.com

Alan M. Feldman*
Zachary Arbitman*
George Donnelly*
FELDMAN SHEPHERD
WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
zarbitman@feldmanshepherd.com

* Pro Hac Vice Motion Forthcoming

*Attorneys for Plaintiff*